THURSTON, impleaded with COLLINS v. PERKINS, HOPKINS & WHITE.

Where parties enter into articles of co-partnership for a certain period, and thereafter transact business as co-partners, they are to be held and considered as such, so far as the rest of the community is concerned, until the community are duly notified of the dissolution.

Appeal from the Circuit Court of St. Louis county.

The plaintiff in error, Thurston, contends that the court

3*

MAY TERM, 1841.

Thurston, impleaded with Collins, v. Perkins, Hopkins & White.

below committed error in overruling his motion for a new trial; and in support of this position, makes the following points:

1st. The jury found a verdict against the weight of evidence. On this point refer to the testimony as preserved in the bill of exceptions.

2d. The jury found their verdict against the instructions of the court.

3d. The court below ought to have set aside the judgment and verdict, and granted a new trial to defendant, Thurston, on the ground of newly discovered and material evidence. 2 H. Blk. R. 618; Gowen Partnership, from 248, to 252; Marshall v. Union Ins. Co. 2 Wash. C. C. R. 440; Peters' Digest, vol. 107, 1 Johns. cases, 402.

*Bogy & Hunton for Defendants.*

The assignment of errors questions the propriety of the decision of the court overruling the motion for a new trial.

In support of that decision we submit the following propositions:

1st. The defendants were partners anterior to the execution of the note sued on, and as such, are jointly liable, unless a dissolution be proven.

2d. Munn had no authority, by virtue of his letter of attorney, to dissolve the partnership. See Story's Agency, pages 62 to 68.

3d. Even if a partnership be dissolved as between the parties, they must give notice, to free themselves from responsibility to others. Watson on Partnership, 385; Starkie on Evidence, 1078.

4th. To entitle a party to a new trial, upon the ground of newly discovered evidence, these facts must appear: that the applicant had been vigilant in preparing his case for trial; that the facts were discovered after the trial, and that they would probably produce a different result; that the evidence discovered will tend to prove facts which were not directly in issue on the trial, or were not known or investigated by proof. Graham on New Trials, 463; 3 J. J. Marshall, 522; 2 J. J. M. 52; Pirtle's Digest, 124 & 125.

MAY TERM,
1841.

Thurston,im-
pleaded with
Collins,
v:
Perkins, Hop-
kins& White.

5th. The supreme court will not grant a new trial except when the jury clearly erred, and the court refused a new trial. 4 Mo. Rep. 295.

All which is respectfully submitted.

*Opinion of the Court by Tompkins, Judge.*

Perkins, Hopkins & White, brought their action in the circuit court against Charles Collins, and said James C. Thurston, on a note purporting to be made by said Collins & Thurston, to Smith, Salisbury & co., and by them assigned to said Perkins, Hopkins & White. The circuit court gave judgment against said Collins & Thurston; and Thurston now appeals to this court to reverse the judgment of the circuit court against himself.

Thurston had, by a separate plea, denied the execution of the note, which is the foundation of the action.

The plaintiffs in the action first proved the note to be made by Charles Collins, one of the defendants in the circuit court, in the name of Collins & Thurston; and also, that the as-*signment* of the note was in the handwriting of Benjamin P. Smith, one of the firm of Smith, Salisbury & co.

The plaintiffs then read in evidence an instrument of writing to this effect: " This agreement, made and entered into this 22d day of June, A. D. 1839, by and between Charles Collins and James C. Thurston, both of the city of St. Louis and State of Missouri, witnesseth, that said Collins & Thurston have agreed, and hereby do agree, to become copartners together in the wholesale and retail dry goods and domestic commission business, in the city of St. Louis, under the name, firm and style of Collins & Thurston; which said copartnership shall continue for the space of five years from date. And to this end the said Thurston agreed to advance towards the capital of said concern, the sum of two thousand dollars in cash, and to devote his time and active services to the interests and business of said firm. The said Collins agrees to advance towards the capital of said concern the sum of ten thousand dollars, which amount he

MAY TERM,
1841.

Thurston, im-
pleaded with
Collins,
v.
Perkins, Hop-
kins & White.
binds himself to pay into the said concern within twelve
months from the date of these presents.   It was also agreed
by and between the said Collins & Thurston, that the said
Thurston was to be the active managing member of the said
concern;  also, that the said Collins & Thurston were to
share the profits, and bear the losses, as the case may, &c."

Some time after entering into this partnership, Thurston
went to New York, from which place he wrote to Collins
that he could not buy goods on any terms whatever; that
Collins' friends were willing to do any thing and every thing
for them both, they could do consistently under the present
circumstances.    But in consequence of some of his paper
being protested there some time before, it all proved of no
effect.    Thurston further wrote that, after learning how the
matter stood, he consulted both Collins' friends and his own,
and they " advised him by all means to give it up."

He also recommended to Collins a dissolution of partner-
ship; and to that end sent on two instruments of writing
executed by himself, which he desired Collins also to execute.
This letter of Thurston was dated 7th August, 1839.    The
instruments of writing sent as above mentioned by Thurs-
ton, were signed Charles Collins, by an attorney in fact,
acting under a very comprehensive power from Collins.  He
notified Thurston, but not Collins of his act.    No publica-
tion was made, either of the commencement or the dissolu-
tion of the partnership.

Thurston moved for a new trial, because the verdict of
the jury was against evidence; and he had discovered new
and material evidence, and had by extraordinary and unex-
pected events, been detained from attending to the trial of
the cause.   The new evidence is, that he can prove by one
Benjamin P. Smith, one of the payees of the note sued on,
that at the time he was in the city of New York, in the
summer of 1839, whither he had gone to purchase goods for
the firm of Collins and Thurston, and after he had abandon-
ed the idea of purchasing goods for and on account of said
firm, and after he had written to St. Louis that the articles
of copartnership might be annulled, that he was introduced
by said Smith to said plaintiffs, but that he not only did not

offer to purchase goods from them for and on account of said Collins & Thurston, but that he did not inform them even that such a firm had ever been formed or contemplated; that he could also prove by said Smith, that he, said Smith, had informed said Collins of the annulling of the said articles of co-partnership between him and the affiant, three or four weeks before any purchases were made by said Collins on account of the firm of Collins & Thurston.

That Collins should, when he went to New York to purchase the goods, which were the consideration of the note here sued on, leave behind him in the hands of an agent, a power of attorney of so extensive a character as to enable that agent to make void any act he, Collins, might do during that absence, seems so extraordinary an act, that, even if the power had been declared in express terms, we might with good reason suspect such act to be tinctured with fraud. As then he did not express in clear terms his intention to give this agent so extensive a power, it is but charitable to suppose that he never intended to give him such a strange power. But even if it could be inferred that Collins did honestly confer on his attorney in fact such power, and that this attorney did in his own person notify Collins of his act before the execution of this note, it would amount to this only, that Thurston, the plaintiff in error, had entered into a partnership with Collins, of which, although notice had not been given in the newspapers, yet we are at liberty to believe that the notice of such partnership might have been extensively circulated by the numerous friends who generally assist in such business. Certain it is, that Thurston himself tells us that he had himself communicated in New York the information of this partnership, so far as to find that he could not purchase goods on its credit. Both his friends and those of Collins had been informed of its existence, for he says they advised him by all means " *to give it up.*"

But it is an admitted fact, that Collins and Thurston had entered into articles of agreement to become partners for five years from the day of the date. The world is not, then, to look into their affairs to see whether they did actually

MAY TERM.
1841.

Thurston, impleaded with Collins,

v.

Perkins, Hopkins & White.

Where parties enter into articles of co-partnership for a certain period, and thereafter transact business as co-partners, they are to be held and considered as such, so far as the rest of the community is concern-

MAY TERM,
1841.

Thurston, im-
pleaded with
Collins,

v.

Perkins, Hop-
kins & White.

ed, until the
community
are duly noti-
fied of the
dissolution.

trade, in order to consummate such partnership, but they are to be held and considered as such from the date, so far as the rest of the community is concerned, until this community is duly notified that they have dissolved it.

The evidence, then, appears to have been sufficient to justify the jury in finding the verdict on which the court entered up the judgment; and even if the appellant, Thurston, could prove all that he expects to prove, on a new trial, the jury ought, in my opinion, to find against him.

The judgment of the circuit court is therefore affirmed.